UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**ADAN MARQUEZ HERNANDEZ,**

　　　　**Petitioner,**

　　v.　　　　　　　　　　　　　　　　**Case No.:  6:26-cv-00621-AGM-LHP**

**ACTING DIRECTOR TODD LYONS,
SECRETARY KRISTI NOEM,
PAMELA BONDI, ATTORNEY
GENERAL OF THE UNITED
STATES; GARRETT RIPA, US
IMMIGRATION AND CUSTOMS
ENFORCEMENT, AND
DEPARTMENT OF HOMELAND
SECURITY,**

　　　　**Respondents.**

---

**<u>ORDER</u>**

THIS CAUSE comes before the Court upon Petitioner Adan Marquez Hernandez's

Emergency Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 (Doc. # 1; the

"Petition") and Emergency Motion for Temporary Restraining Order and/or Preliminary

Injunction (Doc. # 2; the "Motion").  For the reasons stated herein, the Petition is due to be

dismissed without prejudice and the Motion denied.

**I.　　BACKGROUND**

Mr. Hernandez is a citizen of Mexico challenging his ongoing detention at the Baker

County Detention Center.  (Doc. # 1 ¶ 22.)  Mr. Hernandez alleges that he entered the United

States without inspection at the Arizona border in 2010 and has been living in the United

States ever since.  (*Id.* ¶ 13.)  The Petition claims that "[b]ased on information and belief,

Petitioner has no criminal record" but Mr. Hernandez was convicted of driving without a valid driver's license in 2013 and adjudication was withheld on the same offense in 2017.[1]  (*Id.* ¶ 16.)

On March 10, 2026, Florida Highway Patrol encountered Mr. Hernandez as part of a traffic stop.  (*Id.* ¶ 31.)  Pursuant to an Immigration and Customs Enforcement ("ICE") detainer, Mr. Hernandez was transported to and held at the Marion County Jail.  (*Id.*)  On March 12, 2026, he was transferred to Orange County Jail.  (*Id.*)  On March 15, 2026, he was transferred to the Baker County Detention Center, where he allegedly remained at the time his Petition was filed.  (*Id.*)  The Petition alleges that ICE has initiated removal proceedings against Mr. Hernandez, but it does not identify when those proceedings began.  (*Id.* ¶ 18.)

Mr. Hernandez asserts three claims in his Petition: Violation of the Administrative Procedure Act ("APA") (Count I); Violation of Due Process (Count II); and Unreasonable Seizure (Count III).  (*Id.* at 12–13.)  The Petition demands that the Court (1) assume jurisdiction over this matter; (2) order Respondents to show cause why this Petition should not be granted within three days; (3) declare Mr. Hernandez's continued detention unconstitutional and unlawful, in violation of the Fourth Amendment, Fifth Amendment, APA, and statutory authority; (4) issue a writ of habeas corpus ordering Respondents to immediately release Mr. Hernandez from custody; (5) order Respondents to immediately return Mr. Hernandez's personal belongings; (6) enter preliminary and permanent injunctive relief enjoining Respondents from further unlawful detention; (7) enter preliminary and permanent injunctive relief enjoining Respondents from placing Mr. Hernandez under any

---

[1] In Florida, driving without a valid driver's license is a crime.  *See* Fla. Stat. § 322.03.

restrictive supervision conditions; (8) award Mr. Hernandez reasonable attorneys' fees and costs; and (9) grant such further relief as the Court deems just and proper. (*Id.* at 13–14.) Counsel for Mr. Hernandez certified that the facts alleged in the Petition are "true and correct to the best of [her] knowledge." (*Id.* at 15.)

Mr. Hernandez filed the Motion pursuant to Federal Rule of Civil Procedure 65. The Motion alleges Respondents might transfer Mr. Hernandez "beyond this Court's jurisdiction," and might subject him to "indefinite civil detention without judicial process . . . depriving this Court [of] jurisdiction to adjudicate his claims." (Doc. # 2 at 2.) Mr. Hernandez demands that the Court "enter a Temporary Restraining Order and/or Preliminary Injunction enjoining Respondents, their agents, officers, employees, and all persons acting in concert with them, from removing Petitioner beyond the jurisdiction of the Middle District of Florida pending final adjudication of his habeas corpus petition." (*Id.* at 6.)

## II. LEGAL STANDARD

### A. Writ of Habeas Corpus

The Latin term "habeas corpus" literally translates "you shall have the body"[2] and the issuance of the writ orders that the detainee be brought into court so that the legality of the detention may be assessed. Congress provided district courts the power to issue writs of habeas corpus in 28 U.S.C. § 2241 and provided the legal requirements for issuance in 28 U.S.C. § 2242. Pursuant to § 2242, a petition for the writ must be (1) "in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf"; (2)

---

[2] Blackstone defined the writ of habeas corpus as a writ "directed to the person detaining another, and commanding him to produce the body of the prisoner with the day and cause of his detention." 3 W. Blackstone, Commentaries on the Laws of England 131.

allege the "facts concerning the applicant's commitment or detention"; and (3) allege the "name of the person who has custody over him and by virtue of what claim or authority, if known."

### B. Subject Matter Jurisdiction Generally

"Federal courts are courts of limited jurisdiction and are required to inquire into their jurisdiction at the earliest possible point in the proceeding." *Kirkland v. Midland Mortg. Co.*, 243 F.3d 1277, 1279–80 (11th Cir. 2001). The party seeking to invoke the Court's jurisdiction bears the burden of proving the existence of federal jurisdiction. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002). Not only is it unnecessary for district courts to wait for lack of subject matter jurisdiction to be raised as a defense, it is "well settled that a federal court is obligated to inquire into subject matter jurisdiction *sua sponte* whenever it may be lacking." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 410 (11th Cir. 1999).

"[B]ecause the Constitution unambiguously confers [] jurisdictional power to the sound discretion of Congress, federal courts 'should proceed with caution in construing constitutional and statutory provisions dealing with [their] jurisdiction.'" *Id.* at 409 (cleaned up). When a district court acts without subject matter jurisdiction, "it violates the fundamental constitutional precept of limited federal power," "unconstitutionally invades the powers reserved to the states to determine controversies in their own courts," and "offends fundamental principles of separation of powers." *Id.* at 409–10.

Doubt as to the existence of its jurisdiction may arise from a trial court's examination of the face of the pleading and the attached exhibits. *See McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). If the court determines that

the face of the petition fails to allege a sufficient basis for subject matter jurisdiction, dismissal is appropriate. *Id.* (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

A district court is required to consider its jurisdiction over a petitioner's habeas corpus claims before ruling on the merits, *see Sampson v. Warden, FCC Coleman-USP I*, 605 F. App'x 861, 863 (11th Cir. 2015), because the courts are limited to granting habeas relief "within their respective jurisdictions." 28 U.S.C. § 2241(a).

## C. Jurisdiction Over the Custodian

To determine whether it has jurisdiction in a habeas proceeding, the court must be able to identify who the petitioner alleges had physical custody over him at the time the petition was filed. *Braden v. 30th Judicial Circuit Court of Ky.*, 410 U.S. 484, 495 (1973). The "writ of habeas corpus does not act upon the prisoner who seeks relief, but upon the person who holds him in what is alleged to be unlawful custody." *Id.* at 494–95. Thus, the proper respondent to a habeas petition is "the person who has custody over [the petitioner]." 28 U.S.C. § 2242; *see also* § 2243 ("The writ, or order to show cause shall be directed to the person having custody of the person detained."); *Wales v. Whitney*, 114 U.S. 564, 574 (1885) ("[T]hese provisions contemplate a proceeding against some person who has the immediate custody of the party detained[.]").

In *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), the Supreme Court expressly disapproved of the idea that the immediate custodian rule is "flexible." *Id.* at 427 ("Padilla does not deny the immediate custodian rule's general applicability, but argues that the rule is flexible and should not apply on the unique facts of this case. The Court disagrees."). As a "default rule," the Supreme Court in *Padilla* explained that when a petitioner challenges his "present physical

5

confinement . . . the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. Under this rule, jurisdiction generally lies in only one district: the district of confinement. *Id.* at 442. The Court's jurisdiction is fixed as of the date the petition is filed and if the petition adequately names the immediate custodian, then subsequent moving of the petitioner does not defeat the court's habeas jurisdiction. *Id.* at 441 (discussing *Ex parte Endo,* 323 U.S. 283 (1944)). The district court "d[oes] not lose its jurisdiction when a habeas corpus petitioner [is] removed from the district so long as an appropriate respondent with custody remain[s]." *Jones v. Cunningham*, 371 U.S. 236, 243–44 (1963).

### D. Inapplicability of Jurisdiction Stripping

District courts have the power to issue writs of habeas corpus pursuant to 28 U.S.C. § 2241(a). However, Congress "may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution," *University of South Alabama*, 168 F.3d at 409, and, to this end, Congress has statutorily provided that district courts have limited jurisdiction to issue writs of habeas corpus in certain immigration and alien removal contexts. *See* 8 U.S.C. § 1252(a)(2)(A).

If, in the give-and-take of a complicated statutory scheme enacted by Congress, a trial court ultimately lacks jurisdiction, the court cannot allow the litigation to proceed under the guise of a claim that "dress[es] up a claim with legal or constitutional clothing to invoke [its] jurisdiction." *Camarena v. Director, Immigration & Customs Enforcement*, 988 F.3d 1268, 1274 (11th Cir. 2021) (quoting *Patel v. U.S. Att'y Gen.*, 971 F.3d 1258, 1272 (11th Cir. 2020)). And while the Constitution states that the "privilege of the Writ of Habeas Corpus shall not be

suspended, unless when in Cases of Rebellion or Invasion the public safety may require it," U.S. Const. art. I, § 9, cl. 2, "[t]he writ of habeas corpus known to the Framers was quite different from that which exists today." *Felker v. Turpin*, 518 U.S. 651, 663 (1996).  If a writ was not available as the writ was understood in 1789, the unavailability of it today does not violate the Suspension Clause.  *Jones v. Hendrix*, 8 F.4th 683, 689–90 (8th Cir. 2021) ("Further, considering that the Suspension Clause refers to a specific legal instrument that existed at the time, we think there is good reason to adhere closely to the 1789 meaning.").

Additionally, claims that are "far outside the 'core' of habeas may not be pursued through habeas."  *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 125 (2020) (rejecting a habeas petition used to obtain authorization for an alien to remain in a country other than his own, noting that "we have no evidence that the writ as it was known in 1789 could be used to require that aliens be permitted to remain in a country other than their own, or as a means to seek that permission").  Although a habeas court has the power to order the conditional release of an unlawfully-detained person, "release need not be the exclusive remedy and is not the appropriate one in every case in which the writ is granted."  *Boumediene v. Bush*, 553 U.S. 723, 779 (2008).

### E.  Habeas Rules

A petition for a writ of habeas corpus is governed by the Rules Governing Section 2254 Cases in the United States District Courts, Pub. L. 94426 (the "Habeas Rules").  While Rule 1(a) specifies that the Habeas Rules govern a petition filed under 28 U.S.C. § 2254, Rule 1(b) makes clear that a "district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)."  The Habeas Rules are consistent with the statutory

requirements imposed by 28 U.S.C. § 2242, including that "[a]pplication for a writ of habeas corpus shall be in writing signed and verified by the person for whose relief it is intended or by someone acting in his behalf" and "shall allege the facts concerning the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what claim or authority, if known."

Like 28 U.S.C. § 2242, Rule 2(c) of the Habeas Rules requires that the petition "specify all the grounds for relief available to the petitioner;" "state the facts supporting each ground;" and "be signed under penalty of perjury by the petitioner or a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." Habeas Rule 2(c)(1), (2), (5).

Habeas Rule 4 requires that the district court "must dismiss the petition and direct the clerk to notify the petitioner" if the district court determines that "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief[.]" And "[i]n every case," Rule 4 requires that the clerk serve a copy of the petition and any order "on the respondent and on the attorney general or other appropriate officer of the state involved." *Id.*

"A prime purpose" of Rule 2(c)'s demand that petitioners plead with particularity is to "assist the district court" in its duties under Rule 4. *Mayle v. Felix*, 545 U.S. 644, 656 (2005). As between Rule 8 of the Federal Rules of Civil Procedure and Rule 2(c) of the Habeas Rules, "Habeas Corpus Rule 2(c) is more demanding." *Id.* at 656.

**F.  Preliminary Injunctive Relief**

To establish entitlement to preliminary injunctive relief, the movant must establish: "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would

8

inflict on the non-movant; and (4) that entry of the relief would serve the public interest." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005). "The balance-of-the-harms and public-interest elements merge when the government is the party opposing the injunctive relief." *Swain v. Junior*, 961 F.3d 1276, 1293 (11th Cir. 2020). "A preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establishes the burden of persuasion as to the four requisites." *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989). A failure to establish any one of these elements warrants denial of injunctive relief. *See Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

"Litigants are not entitled to greater temporary remedies pending litigation than they would be entitled to as the ultimate prevailing party." *Gomez v. U.S.*, 899 F.2d 1124, 1127 (11th Cir. 1990). Consequently, in considering a request for injunctive relief, the district court must assess the remedies available in the underlying action. If the request for injunctive relief seeks a remedy different or greater than the remedy available if the movant were to prevail at the conclusion of an adjudication on the merits, then the request must be denied.

### G. Local Rules of the Middle District of Florida

Middle District of Florida Local Rule 6.01 provides that a motion for temporary restraining order "must include" "(1) 'Temporary Restraining Order' in the title; (2) specific facts — supported by a verified complaint, an affidavit, or other evidence — demonstrating an entitlement to relief; (3) a precise description of the conduct and the persons subject to restraint; (4) a precise and verified explanation of the amount and form of the required security; (5) a supporting legal memorandum; and (6) a proposed order."

9

Local Rule 6.02 provides that a motion for a preliminary injunction "(1) must include 'Preliminary Injunction' in the title but otherwise must comply with Local Rule 6.01(a) and (b) and (2) must include as an attachment each paper on which the movant relies."

## III.  ANALYSIS

### A.  The Petition

#### 1.  Failure to Comply with Statutory Requirements

The Petition fails to meet the requirements of 28 U.S.C. § 2242, which plainly requires that it be both "signed and verified by the person for whose relief it is intended or by someone acting in his behalf." To "verify" something means to "prove [it] to be true; to confirm or establish the truth or truthfulness of; to authenticate"; to "confirm or substantiate by oath or affidavit; to swear to the truth of." *Verify*, Black's Law Dictionary (12th ed. 2024). Here, counsel for Mr. Hernandez signed and attempted to verify the allegations of the Petition. Counsel "verified" the Petition by stating the allegations within are "true and correct to the best of [her] knowledge." (Doc. # 1 at 15.)

As other jurisdictions have acknowledged, "[i]t is settled that a verification wherein affiant affirms merely that certain facts are, 'true to the best of his knowledge, information and belief,' means nothing 'more than the affiant *believes* the allegations of the bill to be true, though he has neither knowledge nor information of their truth,' and, 'an affidavit of belief in their truth simply amounts to nothing.'" *Board of Water & Sewer Com'rs of City of Mobile v. Spriggs*, 146 So. 2d 872, 873 (Ala. 1962).

In this instance, the form of the verification is clearly not appropriate given the character and objectives of this proceeding. By its own terms, the verification explains that

10

the allegations are merely made to the best of counsel's knowledge.  Thus, the verification in support of the Petition is insufficient.

### 2. Failure to Comply with Pleading Standards

Whether examined under the Federal Rules of Civil Procedure or the Habeas Rules, the Petition fails to comply with requisite pleading standards and is an impermissible "shotgun pleading" due for dismissal.

### a. Federal Rules

The Federal Rules of Civil Procedure mandate that a pleading contain the following:

(1)    a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support;

(2)     a short and plain statement of the claim showing that the pleader is entitled to relief; and

(3)    a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8(a).  The allegations must be simple, concise, and direct.  Fed. R. Civ. P. 8(d)(1).  In addition, "[a] party must state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).

"Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"  *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015).  Recognizing that the use of the label "shotgun pleading" may be imprecise, the Eleventh Circuit has "identified four rough types or categories of shotgun pleadings."  *Id.* at 1321.  "The most common type . . . is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each

11

successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second type is one that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. The third type fails to "separat[e] into a different count each cause of action or claim for relief." *Id.* at 1322–23. The fourth type "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "[T]he unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.*

Although "it is much easier in the short term to permit shotgun pleadings . . . instead of intervening *sua sponte* to narrow the issues . . . district courts have the power and the duty to define the issues at the earliest stages of litigation" and it is appropriate to "quickly demand repleader" to avoid being "drowned in an uncharted sea," a "massive record," and "loose pleadings." *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

Here, the Petition is a shotgun pleading for two reasons: (1) it lumps the Respondents together in a way that makes it impossible for the Court to determine who Mr. Hernandez alleges did what and when; and (2) each count adopts and incorporates the allegations of the preceding paragraphs and counts.

The Petition identifies six Respondents. Mr. Hernandez alleges broadly that "Respondents' failure to adhere to its own regulation amounts to a violation of Petitioner's

Constitutional right to due process." (Doc. # 1 ¶ 44.) He demands that the Court "[o]rder Respondents to immediately return" his belongings and enter "permanent and preliminary injunctive relief enjoining Respondents" from detaining him further. (*Id.* ¶¶ 58, 59.) Yet the Petition identifies more than one of the Respondents as his "immediate custodian" and does not sufficiently attribute relevant acts or omissions to any Respondent such that the Court could definitively determine to whom the writ should be issued and who should be enjoined and why.

Aside from grouping the Respondents together, the allegations themselves incorporate all preceding facts, including those of each prior claim. Each of Mr. Hernandez's three claims begins with "Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein." (*Id.* ¶¶ 42, 45, 52.) The net effect is that each claim alleges facts that are not directed toward the proper Respondent, nor "pertinent to each claim." *See Barmapov v. Amuial*, 986 F.3d 1321, 1323 (11th Cir. 2021). The remaining allegations within each claim do little to clarify. For example, Count III—a claim for "unreasonable seizure"—simply states that "Petitioner is being detained without charge and without probable cause, constituting an unreasonable seizure under the Fourth Amendment of the U.S. Constitution." Not only is this allegation conclusory, but as the sole allegation apart from the preamble, the Court must parse through the factual body of the Petition while "sift[ing] out the irrelevancies" in order to ascertain the basis of the claim, "a task that can be quite onerous." *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002). More importantly, the deficient pleading fails to provide

13

Respondents proper notice of the "grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

While the pleading standard of Rule 8 does not require "detailed factual allegations," it demands more than "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given the constitutional issues and separation of powers concerns implicated by the Petition, the Court is "unwilling to address and decide serious constitutional issues" on the basis of a shotgun pleading. *See Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001).

### b. Habeas Rules

Examined under the Habeas Rules, the Petition notably fails to meet the requirements of Rule 2(c) for the same reasons. It does not "specify all grounds for relief available to the petitioner" or "state the facts supporting each ground."

Additionally, Rule 4 imposes a screening function upon the Court that states "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief . . . the judge must dismiss the petition[.]" The Petition here demands that this Court take the extraordinary step of directing the work of a different branch of government; it does so with bare and unsupported assertions, while leaving out obviously important details. For example, the Petition notably omits details surrounding Mr. Hernandez's entry into the United States and his legal status at the time of his detention. While the Petition states that "Petitioner is a native and citizen of Mexico who entered the United States without inspection at the Arizona border on or about 2010, and has been living in the United States since," it does not specify whether Mr. Hernandez entered at a port of entry, nor does it assert that he has been

14

lawfully present in the United States since his arrival.  These facts seem obviously important. Indeed, Mr. Hernandez did not attach any documents showing proof of lawful residency or immigration status in support of his position.  Instead, the Petition includes (1) a motion to dismiss filed by someone else in a separate district court case, together with its attachments; (2) a screenshot from the Department of Homeland Security website; and (3) a blank sample warrant form.

These are not trivial omissions. Mr. Hernandez alleges he is currently in removal proceedings.  The facts regarding his entry into the United States and his legal right to remain are relevant to the Court's analysis of the legality of his detention.  *See, e.g.*, 8 U.S.C. § 1101(a)(13)(A) ("The terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer.").  The Petition seemingly suggests that the Court should insert itself into the complex framework of immigration law, under which an alien can be detained for a host of reasons, without explaining whether Mr. Hernandez was lawfully present in the United States.  Ultimately, "conclusory allegations [and] unwarranted deductions of facts or legal conclusions" asserting that Mr. Hernandez is being unlawfully detained, without more, are insufficient. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).  And given that "Habeas Corpus Rule 2(c) is more demanding" than Rule 8 of the Federal Rules of Civil Procedure, *Mayle*, 545 U.S. at 655, the Petition is subject to dismissal on these grounds.

### 3.  Failure to Adequately Allege Jurisdiction Over the Custodian

As a consequence of the fact that the Petition itself is a shotgun pleading, the Court's jurisdiction over the immediate custodian cannot be determined.  The proper respondent to a

habeas petition is "the person who has custody over [the petitioner]," 28 U.S.C. § 2242, and the Supreme Court has rejected the idea that this rule is flexible. *Padilla*, 542 U.S. at 427. The proper respondent is the "warden of the facility" not some "remote supervisory official," *id.* at 435, and jurisdiction is fixed based on the custodian at the time of filing the petition. *Id.* at 441.

Here, Mr. Hernandez filed his Petition naming six different respondents: (1) Todd Lyons, Acting Director of ICE; (2) Kristi Noem, Secretary of the United States Department of Homeland Security; (3) Pamela Bondi, Attorney General of the United States; (4) Garrett Ripa, Field Office Director of the Miami ICE Office; (5) ICE, the agency; and (6) the Department of Homeland Security. Among these individuals and entities, he claims that his immediate custodian is both ICE (Doc. # 1 ¶ 24) and the Field Office Director of the Miami Immigration and Customs Enforcement Office (*id* ¶ 27).[3]

When petitioned to interfere with the workings of the State of Florida or another branch of federal government, the Court's role is to first neutrally determine if the petitioner has complied with threshold legal requirements that uniformly apply in such cases. One of those requirements is that the petitioner must clearly and unequivocally identify his immediate custodian as the proper respondent. Without addressing Supreme Court precedent or the "default rule" from *Padilla*, Mr. Hernandez names multiple individuals and entities as respondents, claims several of them are his immediate custodian (implicitly acknowledging that the others are not), and suggests that the statement of a non-party in a motion filed in a

---

[3] The warden of the Baker County Detention Center is not named as a respondent or alleged to be Mr. Hernandez's immediate custodian, and Mr. Hernandez does not address the application of the "default rule" from *Padilla*.

16

different case in a different division is somehow a binding rule governing the immediate custodian analysis.  Meanwhile, Mr. Hernandez demands immediate, broad, affirmative relief against each of the Respondents.  It is Mr. Hernandez's burden to demonstrate that the Court has jurisdiction over his custodian, and he has not met that burden here.

### 4. The Petition Does Not Allege Inapplicability of Jurisdiction-Stripping Statutes

Although Congress undeniably granted district courts the power to issue the writ of habeas corpus, it expressly deprived district courts of the power to issue the writ in certain immigration contexts.  28 U.S.C. § 2241(a).  For example, "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."  8 U.S.C. § 1252(a)(2)(A).  Here, the Petition demands issuance of the writ in an immigration context, and states that Mr. Hernandez is currently in removal proceedings.  (Doc. # 1 ¶ 18.)  Based on his own allegations and the lack of any allegation that no jurisdiction-stripping provision applies, the Court is uncertain as to its jurisdiction.  Binding precedent directs that a court may not bend jurisdictional rules for cases it deems "exceptional," "special," or "unusual," *Padilla*, 542 U.S. at 450, and "a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists[.]" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 818 (1988).

### B. The Motion for Preliminary Injunctive Relief

#### 1. Procedural Failures

The Motion is due to be denied because it fails to meet the requirements of Local Rule 6.01 and Federal Rule of Procedure 65.  Local Rule 6.01(a)(2) requires a movant to submit

17

"specific facts — supported by a verified complaint, an affidavit, or other evidence — demonstrating an entitlement to relief[.]" For the same reasons that the verification was insufficient to support the Petition, it fails to support the Motion. While "[a]t the preliminary injunction stage, a district court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction," it should only do so "if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Given the nature of this proceeding and the relief requested by Mr. Hernandez, the verification is insufficient and fails to provide the Court with evidence that is appropriate given the character and objectives of the proceeding.

### 2. Substantive Failures

#### a. Likelihood of Success on the Merits

Both (1) for the same reasons that justify dismissal of the Petition as a shotgun pleading and also (2) because the Petition is now dismissed, Mr. Hernandez cannot establish a substantial likelihood of success on the merits of his Petition.

"Absent a properly-filed complaint, a court lacks power to issue preliminary injunctive relief." *Powell v. Rios*, 241 F. App'x 500, 505 n.4 (10th Cir. 2007). A complaint is required because "injunctive relief must relate in some fashion to the relief requested in the complaint." *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005). The requested relief cannot "deal[] with a matter lying wholly outside the issues in the suit." *Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir. 1997); *see also Gomez*, 899 F.2d at 1127 ("Litigants are not entitled to greater temporary remedies pending litigation than they would

18

be entitled to as the ultimate prevailing party."). "[F]acts contained in a motion or brief 'cannot substitute for missing allegations in the complaint.'" *EEOC v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1030 n.5 (11th Cir. 2016) (quoting *Kedzierski v. Kedzierski*, 899 F.2d 681, 684 (7th Cir. 1990)). Because the Petition is dismissed, the Motion must be denied.

Even if dismissal of the Petition did not compel denial of the Motion, Mr. Hernandez failed to present any controlling authority allowing injunctive relief in the form of prohibiting his transfer from one facility to another. Mr. Hernandez states in the Motion that "Respondents may potentially transfer Petitioner beyond this Court's jurisdiction, which would subject Petitioner to potential indefinite civil detention without judicial process and render his petition moot[.]" (Doc. # 2 at 2.) The Motion seeks to enjoin Respondents "from removing Petitioner beyond the jurisdiction of the Middle District of Florida pending final adjudication of his habeas corpus petition." (*Id.* at 6.) Indeed, there are good reasons to question whether such relief is within this Court's authority to grant. Courts have interpreted immigration statutes to mean that district courts *do not* have jurisdiction to enjoin the transfer of detainees from one location to another in other contexts. *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (recognizing the Attorney General's authority to determine the location of detention and, "therefore, to transfer aliens from one detention center to another"); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (recognizing that the Attorney General has "discretionary power to transfer aliens from one locale to another, as she deems appropriate"); *see also* 8 U.S.C. § 1231.

Further, Mr. Hernandez requests the entry of a preliminary injunction that seemingly would grant him relief that is not available in the underlying writ proceeding. The law does

19

not permit this in other contexts, and Mr. Hernandez does not explain how it could here.  He has not provided any authority for the proposition that the writ would entitle him to an injunction prohibiting his transfer from one place to another.  Mr. Hernandez has not even provided controlling authority that demonstrates he would be entitled to release if the petition were granted.  The Supreme Court has made clear that release is *not* the "exclusive remedy," nor is it "the appropriate one in every case in which the writ is granted." *Boumediene*, 553 U.S. at 779.  In the same vein, Mr. Hernandez has not supplied authority for the proposition that the power to order release necessarily also includes the power to prohibit transfer from one facility to another, and both statutory immigration law and cases interpreting that law suggest it would not.

In looking at the claims themselves (to the extent the Court can analyze the Petition as it is a shotgun pleading), Mr. Hernandez asserts in Count II that he is entitled to the issuance of the writ of habeas corpus because he has been denied due process of law through "prolonged civil detention."  Although Mr. Hernandez omits any factual allegations about whether he entered the United States illegally, he does allege that he is currently in the midst of removal proceedings.  Given this, when considering the likelihood of his success on Count II, it is necessary to consider *Matthews v. Eldridge*, 424 U.S. 319 (1976).

In *Matthews*, the Supreme Court observed that due process "is not a technical conception with a fixed content unrelated to time, place and circumstances" but rather "is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334.  Resolving whether a process is constitutionally sufficient "requires analysis of the governmental and private interests that are affected." *Id.*  To that end, consideration of

"[t]hree distinct factors" is necessary: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 335.

Here, on the first factor, Mr. Hernandez has an interest that will be affected by the official action, but based on the aforementioned omissions, his interest appears to be that of a person not lawfully present in the United States. On the second factor, if Mr. Hernandez concedes that he is not lawfully present in the United States, it is not apparent how he is being "erroneously deprived of" an interest in being illegally present in the United States. Third, the United States has an indisputable interest in exercising control over illegal immigration, and the Petition suggests that this Court should impose substantial, additional or substitute procedural requirements to protect his interest in remaining unlawfully in the United States. If the Petition is refiled and includes Count II, Mr. Hernandez is directed to brief the substantial likelihood of success on Count II in light of the *Matthews* factors discussed here.

Additionally, regarding the merits of the Petition as a whole, Mr. Hernandez fails to address significant contrary authority from the Fifth and Eighth Circuits in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026) and *Avila v. Bondi*, No. 25-3248, 2026 WL 819258 (8th Cir. Mar. 25, 2026). While the decisions of these courts are persuasive in nature, if the Petition is amended and the Motion is renewed, Mr. Hernandez must include analysis of *Buenrostro-Mendez* and *Avila*.

21

### b.  Irreparable Harm

Mr. Hernandez also fails to establish that he will suffer irreparable harm absent injunctive relief.  To satisfy this requirement, he must demonstrate that, unless an injunction is issued, he will suffer harm that is neither "remote nor speculative, but actual and imminent," and the injury is one that cannot be remedied if a court waits until the end of trial to award relief.  *Ne. Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville,* 896 F.2d 1283, 1285 (11th Cir.1990) (citation omitted).

The Motion states that "Respondents *could potentially* transport Petitioner to different jurisdictions any time Petitioner files a petition challenging the constitutionality of his detention and subject him to indefinite detention without an opportunity to resolve his constitutional claims." (Doc. # 2 at 4) (emphasis added).  This allegation fails to establish a clear showing of "substantial," "real and immediate" irreparable harm, and instead posits "a merely conjectural or hypothetical [] threat of future injury."  *Siegel,* 234 F.3d at 1177 (citing *Church v. City of Huntsville,* 30 F.3d 1332, 1337 (11th Cir. 1994)).  Further, the Motion does not explain why his transfer and ongoing detention would cause an irreparable injury not compensable post-trial.  *See Siegel*, 234 F.3d at 1177 ("Plaintiffs also contend that a violation of constitutional rights always constitutes irreparable harm.  Our case law has not gone that far, however.").  Thus, Mr. Hernandez has failed to establish the threat of irreparable harm absent injunctive relief.

### c.  Balance of Equities and Public Interest

As a matter of law, immigration policy decisions are entrusted to the political branches and courts owe substantial deference to those judgments.  *Trump v. Hawaii*, 585 U.S. 667, 703–

04 (2018). Particularly where the Petition's failure to comply with pleading requirements impede the Court's ability to assess the Petition, Mr. Hernandez has not demonstrated that the balance of equities and the public interest weigh in his favor.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Hernandez's Petition must be dismissed, and the Motion denied.

Accordingly, it is now

**ORDERED** and **ADJUDGED** that:

1.    The Petition for Writ of Habeas Corpus (Doc. # 1) is **DISMISSED without prejudice**;

2.    The Emergency Motion for Temporary Restraining Order and/or Preliminary Injunction (Doc. # 2) is **DENIED without prejudice;** and

3.    The Clerk is directed to **SERVE** a copy of the Petition and this Order on the Respondents, and the Attorney General of the State of Florida, pursuant to Rule 4 of the Habeas Rules.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this April 2, 2026.

ANNE-LEIGH GAYLORD MOE
UNITED STATES DISTRICT JUDGE

**Copies furnished to:**
Petitioner
Respondents
Attorney General of Florida

23